**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

TERRI LYN ROBERTS-HECHTMAN,

    Plaintiff,

                   Case No. 6:16-cv-1669-Orl-37JRK

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

### **REPORT AND RECOMMENDATION**[1]

### **I. Status**

Terri Lyn Roberts-Hechtman ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"), supplemental security income ("SSI"), and disabled widow's benefits ("DWB"). Plaintiff's alleged inability to work is the result of spinal stenosis, osteoarthritis, degenerative disc disease, a "bad back," a "bad neck," "nerve damage [in] both legs," depression, anxiety, and stress. See Transcript of Administrative Proceedings (Doc. No. 17; "Tr." or "administrative transcript"), filed January 6, 2017, at 60, 72, 86, 97, 289 (emphasis omitted). Plaintiff filed an application for DIB on February 1, 2013[2] and applications for SSI and DWB

---

[1]  "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

[2]  Although actually completed on February 1, 2013, see Tr. at 222, the protective filing date of the application for DIB is listed elsewhere in the administrative transcript as January 31, 2013,
                                   (continued...)

on February 28, 2013,³ alleging an onset date of June 28, 2011. Tr. at 222 (DIB), 234 (SSI), 232-33 (DWB). The applications were denied initially, Tr. at 71-82, 84, 111, 112-16 (DIB); Tr. at 22 (SSI); Tr. at 59-70, 83, 110 (DWB), and upon reconsideration, Tr. at 97-107, 109, 118-22, 123 (DIB); Tr. at 22 (SSI); Tr. at 85-96, 108 (DWB).⁴

At a hearing on December 16, 2014, an Administrative Law Judge ("ALJ") heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by counsel. Tr. at 42-58. On February 18, 2015, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 22-35.⁵

On July 26, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. On September 23, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: (1) "[w]hether the ALJ erred in determining that [Plaintiff] has the residual functional capacity [("RFC")] to perform light work with some

---

²(...continued)
see, e.g., Tr. at 22, 59, 84.

³ Although actually completed on February 28, 2013, see Tr. at 232, the protective filing date of the applications for SSI and DWB is listed elsewhere in the administrative transcript as January 31, 2013, see, e.g., Tr. at 22 (SSI); Tr. at 22, 83, 85 (DWB).

⁴ It is unclear whether Plaintiff's application for SSI was denied early in the administrative process. The ALJ states that this application was denied initially and upon reconsideration, Tr. at 22, but the administrative transcript does not contain these denials, see generally administrative transcript. The ALJ also made a specific disability finding "[b]ased on the application for [SSI]." Tr. at 34. The undersigned notes that a Disability Report from May 3, 2013 indicates, likely in error, that there was "no initial SSI claim on this case." Tr. at 342. These inconsistencies, however, do not affect the undersigned's recommendation.

⁵ The ALJ found Plaintiff "met the non-disability requirements for disabled widow's benefits set forth in [42 U.S.C. § 402(e)]." Tr. at 25. Because the ALJ found that Plaintiff was not disabled at any time "through the date of the [ALJ's] decision," Tr. at 34, however, Plaintiff does not qualify for disabled widow's benefits, see 42 U.S.C. § 402(e)(1)(B).

additional limitations after failing to provide a function-by-function analysis of [Plaintiff's RFC] determination and failing to adequately weigh and consider the opinions of all the physicians in the record"; (2) "[w]hether the ALJ properly relied on the testimony of the [VE] after posing and relying on a hypothetical [that] did not accurately reflect [Plaintiff's] limitations"; and (3) "[w]hether the ALJ erred in finding that [Plaintiff] was 'not entirely credible' when the record clearly reveals that . . . Plaintiff suffered from impairments causing significant limitations." Plaintiff's Brief Addressing the Merits of Appeal (Doc. No. 23; "Pl.'s Br."), filed April 17, 2017, at 2-3; see id. at 10-24. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem.") on June 2, 2017. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons discussed below.

## II. The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 25-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 28, 2011, the alleged onset date." Tr. at 25 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: cervical and lumbar degenerative disc disease, status post lumbar fusions." Tr. at 25 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 28 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing, but never climbing ladders, ropes, or scaffolds. Avoid the following: operating foot controls, overhead reaching, overhead lifting, lifting from the ground, work at heights, work with dangerous machinery, working constantly in temperatures of less than [forty] degrees Fahrenheit, and concentrated exposure to fumes, dusts, chemicals, or other pulmonary irritants. Tasks should be simple [one to five] steps that can be learned in [thirty] days or less, requiring no more than frequent interaction with coworkers, supervisors, and the general public. [Plaintiff] would need to sit at the workstation [fifty percent] of the day.

Tr. at 28 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is capable of performing past relevant work as a bench assembler as normally performed." Tr. at 33 (emphasis omitted). The ALJ did not make alternative findings regarding the fifth and final step of the sequential inquiry. See Tr. at 33-34. The ALJ concluded that Plaintiff "has not been under a disability . . . from June 28, 2011[ ] through the date of th[e D]ecision." Tr. at 34 (emphasis and citation omitted).

-4-

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

The three overall issues Plaintiff raises are addressed below in the following modified sequence: (1) the ALJ's RFC determination and consideration of the medical evidence (Plaintiff's first issue); (2) the ALJ's credibility finding (Plaintiff's third issue); and (3) the ALJ's reliance on the VE's testimony (Plaintiff's second issue).

## A. RFC and Medical Evidence

Plaintiff's arguments with respect to the ALJ's RFC finding and consideration of the medical evidence divide neatly into two sub-issues, addressed separately here: (1) whether the ALJ erred in "failing to provide a function-by-function analysis of [Plaintiff's RFC] determination"; and (2) whether the ALJ failed "to adequately weigh and consider the opinions of all the physicians in the record." Pl.'s Br. at 2.

### 1. Whether the ALJ Erred in Failing to Provide a Function-by-Function Analysis of the RFC Determination

Plaintiff asserts that "the ALJ did not provide us with [Plaintiff's] work-related abilities on a function-by-function basis." Id. at 13. Specifically, Plaintiff argues that "it is not exactly clear from a reading of the ALJ's RFC evaluation how long it was determined [Plaintiff] could sit, stand and walk." Id. Thus, argues Plaintiff, "it is impossible to ascertain whether the ALJ's [RFC] determination is supported by substantial evidence within the record." Id. Responding, Defendant contends that "remand [is] not warranted where, as here, the ALJ did not specifically refer to the claimant's ability to walk or stand in the decision but did limit the claimant to 'light work.'" Def.'s Mem. at 5 (record citation omitted) (citing Carson v. Comm'r of Soc. Sec., 440 F. App'x 863, 864 (11th Cir. 2011)). Defendant asserts the "ALJ further limited Plaintiff's ability to stand and walk to [four] hours in a standard [eight]-hour workday, by finding Plaintiff must have a job that allows her to sit [fifty percent] of the day at her work station." Id. at 5-6 (citation omitted).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step

-6-

five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184 at *1. "Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

> The Social Security Regulations define light work as follows:
>
> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. . . .

20 C.F.R. §§ 404.1567 and 416.967. "'[L]ight work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.'" Freeman v. Barnhart, 220 F. App'x 957, 960 (11th Cir. 2007) (unpublished) (quoting SSR 83-10, 1983 WL 31251, *6). "Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, *6.

Here, contrary to Plaintiff's assertion, the ALJ's RFC assessment does describe Plaintiff's work-related abilities. In concluding that Plaintiff has the RFC to perform light work with additional limitations, the ALJ thoroughly discussed Plaintiff's testimony and medical

records. See Tr. 28-33. As noted above, the ALJ limited Plaintiff to "light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b)," but indicated "[s]he would need to sit at the workstation [fifty percent] of the day." Tr. at 28. These statements make clear how long Plaintiff is able to sit, stand, and walk. See Peppers v. Colvin, 2:13CV488-TFM, 2014 WL 1779255, at *2, *5 (M.D. Ala. May 5, 2014) (finding that the ALJ fulfilled the SSR 96-8P function-by-function analysis requirement by discussing the plaintiff's medical record and testimony and concluding the plaintiff has the RFC to perform "light work as defined in 20 [C.F.R.] 404.1567(b)" with the additional limitation that the plaintiff is "able to sit for six hours during an eight-hour workday, and stand/walk two hours during an eight-hour workday"); Kirtland v. Colvin, 5:13-CV-2175-VEH, 2015 WL 241749, at *4 (N.D. Ala. Jan. 20, 2015) (finding that "[i]t is in no way contradictory for the ALJ to find that Kirtland could perform light work with certain limitations, including the ability to walk and stand for only four hours a day"). Further, at the hearing, when the ALJ asked the VE whether a hypothetical individual with Plaintiff's functional limitations would be able to perform Plaintiff's past relevant work, the ALJ included the limitation of needing to sit for fifty percent of the workday. See Tr. at 56. In responding that this hypothetical person would be able to perform Plaintiff's past relevant work, the VE did not ask for any clarification or identify any inconsistencies in the ALJ's hypothetical. See Tr. at 56. Accordingly, the undersigned finds that the ALJ adequately described Plaintiff's work-related abilities, including Plaintiff's ability to sit, stand, and walk.

### 2. Whether the ALJ Failed to Weigh All the Medical Evidence

Plaintiff argues that "the ALJ did not weigh all of the relevant opinions in the record." Pl.'s Br. at 13. Specifically, Plaintiff asserts the ALJ did not indicate the weight assigned to

the opinions of Dr. William Silverman, id. at 16-19, and "the opinions from the treating sources at Central Florida Family Health Center [("Central Florida Health")]," id. at 19; see id. at 19-20. Plaintiff contends the RFC determination is not supported by substantial evidence because the ALJ should have indicated the weight she assigned to these sources' treatment notes. See id. at 16, 19-20. Responding, Defendant asserts, "The ALJ's decision reflects that [the ALJ] considered those progress notes and gave them significant weight in concluding Plaintiff could perform a range of light work." Def.'s Mem. at 8 (citation omitted). According to Defendant, "[A]ny lack of explicit articulation in the weight given to those notes was, at most, harmless." Id. at 12.

The Regulations establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence

---

[7] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 874 F.3d 1284, 1287 (11th Cir. 2017); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Hargress, 874 F.3d at 1287; Phillips, 357 F.3d at 1240-41; see also

---

[8] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Hargress, 874 F.3d at 1287; Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Here, Dr. Silverman treated Plaintiff for rapid heart rate and back pain. See Tr. at 536, 539 (duplicate), 542. The administrative transcript contains two treatment notes from Dr. Silverman: one dated June 5, 2014, Tr. at 535-40 (duplicate included), and one dated July 11, 2014, Tr. at 541-43.[9] The June 2014 treatment notes indicate Plaintiff at the time "ha[d] a great deal of difficulty moving around" and was "using . . . Aleve or ibuprofen for her pain and difficulty." Tr. at 535, 538 (duplicate). The notes further state, "[M]ost of the pain and spasm[s are] in the lumbar region," and "motion in neck [is] limited with side bending." Tr. at 536 (emphasis omitted), 539 (emphasis omitted) (duplicate). Plaintiff was diagnosed with supraventricular tachycardia, diastolic dysfunction, failed back syndrome, and postlaminectomy syndrome of cervical region. Tr. at 536, 539 (duplicate). In July 2014, Dr. Silverman indicated that Plaintiff was in "[h]orrible agonizing pain." Tr. at 541. He diagnosed her with failed back syndrome, postlaminectomy syndrome of cervical region, tachycardia, and migratory polyarthritis. Tr. at 542. He increased the dosage of her medication and instructed her to walk three to four times a week as part of her treatment. Tr. at 542-43.

According to the record, Plaintiff was treated at Central Florida Health on three occasions for rapid heart rate and back pain. See Tr. at 465-69, 517-21, 524-29. She was treated once by Dr. Ana L. Caro, Tr. at 517-521, and twice by Lajada M. Claiborne, an advanced registered nurse practitioner ("ARNP"), Tr. at 465-69, 524-29. The record reflects Plaintiff was first seen at Central Florida Health in July 2013 by Ms. Claiborne. Tr. at 465-69. On that date, Plaintiff described her pain as "sharp," Tr. at 465, and stated "[s]he lost her

---

[9] The treatment note from June 5, 2014, states that Dr. Silverman saw Plaintiff for a "follow-up" on that date, Tr. at 535, but the record does not contain any prior treatment notes from Dr. Silverman, see generally administrative transcript.

insurance 'several' years ago and has been going to [the] ER for pain management," Tr. at 466. Plaintiff "refused pain management referral" and was prescribed Tremadol for the pain. Tr. at 468. In September 2013, Ms. Claiborne diagnosed Plaintiff with a herniated cervical disc and a herniated lumbar disc. Tr. at 528.[10] According to the progress notes from that date, Plaintiff "state[d] she does[ not] wish to [follow up] with ortho[pedic doctor], physical therapy or pain management" and "state[d] she would continue to just 'deal with the pain[.]'" Tr. at 528. In April 2014, Dr. Caro indicated Plaintiff reported her back pain is "constant," Tr. at 517, and "is on the left and right side now . . . with tingling down both legs," but Plaintiff "denie[d] weakness or numbness," Tr. at 518.[11] Dr. Caro noted: "No spinous process tenderness"; "[n]ormal [range of motion]"; and "some tenderness paraspinal [(sic)] around L4-5 region." Tr. at 520.

Although the ALJ did not state the weight assigned to the treatment notes from Dr. Silverman and Central Florida Health, it is clear from the Decision that the ALJ accepted the impressions and diagnoses contained in them. See Tr. at 29, 31-33. The ALJ discussed these records in the Decision[12] and relied on them in weighing other medical opinions. See Tr. at 29, 31-33. Notably, the ALJ relied on them in giving "little weight" to the opinion of Dr.

---

[10] The treatment notes from this date contain a date of June 27, 2014 on the upper right-hand corner of the pages. See Tr. at 524-29. It is unclear what this date refers to, but the treatment notes indicate that Plaintiff's vitals were taken on September 4, 2013. See Tr. at 524, 529. The undersigned thus finds that the correct date of treatment is September 4, 2013.

[11] The treatment notes from this date contain a date of June 27, 2014 on the upper right-hand corner of the pages. See Tr. at 517-21. It is unclear what this date refers to, but the treatment notes indicate that Plaintiff's vitals were taken on April 21, 2014. See Tr. at 517. The undersigned thus finds that the correct date of treatment is April 21, 2014.

[12] The ALJ did not specifically refer to Dr. Silverman, but she discussed and cited Exhibits 10F and 11F, see Tr. at 31-33, which consist solely of Dr. Silverman's notes, see Tr. at 535-43 (duplicate included). The ALJ specifically refers to the medical records from Central Florida Health, see Tr. at 31, and she also cites Exhibits 6F and 9F throughout the Decision, which contain the medical records from Central Florida Health, see Tr. at 31-33, 465-71 (Exhibit 6F), 517-34 (Exhibit 9F).

Steven Kanner (a consultative examiner) and "some weight" to the opinion of Dr. Thomas Peele (a State agency medical consultant) and assigning Plaintiff greater limitations than those opined by these doctors. Tr. at 32. The ALJ also referred to Dr. Silverman's and Central Florida Health's treatment notes in finding Plaintiff's statements regarding her symptoms "not entirely credible." Tr. at 30; see Tr. at 31. Plaintiff does not assert how the ALJ's findings were affected, or how Plaintiff was harmed, by the ALJ's failure to specifically assign a weight to the opinions expressed in Dr. Silverman's and Central Florida Health's treatment notes. See generally Pl.'s Br. at 10-20. Plaintiff does not identify, and the undersigned has not found, any opinions in these notes that contradict the assessed RFC. It is clear, upon reviewing the records, that these treatment notes are consistent with the ALJ's analysis and RFC finding. Accordingly, any error in the ALJ's failure to specifically assign weight to the opinions expressed in the progress notes is harmless. See, e.g., Wright v. Barnhart, 153 Fed. App'x. 678, 684 (11th Cir. 2005) (unpublished) (finding that "[a]lthough the ALJ did not explicitly state what weight he afforded the opinions of [four physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless").

**B. Credibility Finding**

Plaintiff argues that the ALJ's credibility finding is not supported by substantial evidence because "the ALJ . . . does not offer any specific reasons for undermining [Plaintiff's] testimony, and offers no specific reasons supporting her credibility determination." Pl.'s Br. at 24. Responding, Defendant asserts that "the ALJ articulated specific reasons for finding Plaintiff's subjective complaints not entirely credible." Def.'s Mem. at 13.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

Although "credibility determinations are the province of the ALJ," Moore, 405 F.3d at 1212, "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." Tr. at 30. Later in the Decision, the ALJ discussed the reasons for this finding. See Tr. at 31-32.

Among other observations, the ALJ found that "the medical evidence viewed in its entirety fails to show a disabling level of impairment." Tr. at 31. The ALJ noted that treatment notes show that Plaintiff "appeared in no acute distress, her sensation was intact, her motor strength was full, and she ambulated without an assistive device on physical examinations." Tr. at 31 (citation omitted); see, e.g., Tr. at 457, 467, 479, 482, 520, 602, 607. The ALJ further indicated that there was no evidence showing Plaintiff underwent surgery or long-term physical therapy for her back problems "during the period at issue," and that "there have been significant periods since the alleged onset date during which [Plaintiff] has not sought any medical treatment." Tr. at 31; see generally administrative record.[13] Specifically, the ALJ stated there was "no evidence of treatment between June 2011 and July 2013." Tr. at 31

---

[13] The administrative transcript contains a progress note from Dr. Walter Forman dated April 1, 2013. See Tr. at 458. The note indicates that a lumbosacral spine x-ray was performed, and that Dr. Forman's "conclusion" was "postoperative anterior fusions L4-5 and L5-S1." Tr. at 458 (emphasis and capitalization omitted). Although the progress note does not state the date the fusion was performed, it apparently occurred before the alleged onset date of June 28, 2011 and thus not "during the period at issue." Tr. at 31. At the hearing held on December 16, 2014, Plaintiff testified she had "two neck surgeries and two back surgeries," including fusion in her lower back. Tr. at 50. Further, a progress note from Dr. Steven Kanner dated April 1, 2013, also indicates that Plaintiff "admit[ed] to [two] surgeries on her cervical spine and [two] surgeries on her lumbar spine." Tr. at 456. A progress note from Coastal Orthopaedic & Sports Medicine Center reflects that in December 2009, Plaintiff underwent spinal surgery that included a fusion at L4-5 and L5-S1. Tr. at 408. The note also states that Plaintiff had undergone "previous surgery at L4-5." Tr. at 407. It appears this surgery was a lumbar discectomy that was performed in May 1996. See Tr. at 548; see also Tr. at 581 (October 2014 note indicating Plaintiff "had disc surgery in 1996 at the L4-5 level"). The record reflects that Plaintiff also had surgery on her cervical spine (neck) in January 2005, see Tr. at 579, and January 2006, see Tr. at 586. Evidently, she also had neck surgery in 1990, Tr. at 570, 581, 584, 612, but the record does not contain treatment notes from this procedure. In any event, all of these surgeries were performed before the alleged onset date. Thus, it appears that the anterior fusions at L4-5 and L5-S1 noted in the April 2013 progress note refer to the surgery performed in December 2009, Tr. at 408, which was not "during the period at issue," Tr. at 31.

(citation omitted); see Tr. at 420-21 (June 2011 treatment notes); 465-69 (July 2013 treatment notes).[14] The ALJ also found Plaintiff's reported daily activities are "inconsistent" with Plaintiff's complaints of "disabling symptoms and limitations." Tr. at 31. Specifically, the ALJ noted Plaintiff testified she "bathed and dressed independently, prepared meals, did laundry, made her bed, did light cleaning, drove alone, and shopped." Tr. at 31 (citation omitted); see, e.g., Tr. at 52-54, 318, 345. The ALJ concluded that these "allegations are not supported by the evidence to the extent that she would be precluded from all work activity." Tr. at 31; see Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984) (per curiam) (finding that claimant's daily activities may be considered in assessing credibility of complaints).

The ALJ based her credibility determination on the objective medical evidence, the nature and frequency of treatment, and Plaintiff's reported daily activities. Contrary to Plaintiff's assertion, the ALJ appropriately supported her credibility finding with "explicit and adequate reasons." Wilson, 284 F.3d at 1225. Accordingly, there is no error here.

**C. Reliance on VE's Testimony**

Plaintiff contends the ALJ erred in relying on the VE's testimony because, according to Plaintiff, the ALJ posed a hypothetical question to the VE that failed to adequately reflect Plaintiff's limitations. Pl.'s Br. at 20-24. Defendant states that "the ALJ properly relied on VE testimony to find Plaintiff could perform her past relevant work," but otherwise does not

---

[14] As previously noted in footnote 13, the administrative transcript contains two progress notes dated April 1, 2013: one authored by Dr. Kanner, see Tr. at 456-57, and one by Dr. Forman, see Tr. at 458. Dr. Kanner did not treat Plaintiff; rather, he conducted a consultative medical examination upon referral from the Social Security Administration. See Tr. at 456; Tr. at 26. Dr. Kanner then referred Plaintiff to Dr. Forman, and it appears from the nature of Dr. Forman's progress note that Dr. Forman did not treat Plaintiff. See Tr. at 458. Thus, the ALJ's statement that there was "no evidence of treatment between June 2011 and July 2013," Tr. at 31 (citation omitted), was not made in error.

address Plaintiff's argument regarding the hypothetical question posed to the VE. Def.'s Mem. at 4; see generally id. at 3-17.

An ALJ poses a hypothetical question to a VE as part of the step-five determination of whether the claimant can obtain work in the national economy. See Wilson, 284 F.3d at 1227. The ALJ may rely on a VE's testimony in determining at step four whether an individual is capable of performing any past relevant work. 20 C.F.R. § 404.1560(b)(2). In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling" (internal quotation and citation omitted)); Wilson, 284 F.3d at 1227 (stating that "for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments" (citation omitted)).

Here, Plaintiff correctly acknowledges that the limitations included in the hypothetical question posed to the VE are the same as those in the ALJ's RFC finding. Pl.'s Br. at 21; see Tr. at 28 (RFC finding), 55-56 (hypothetical). Plaintiff's argument on this issue rests on her contentions regarding the medical evidence, addressed above. See Pl.'s Br. at 20-22. Specifically, Plaintiff asserts that the RFC finding and the hypothetical question are unsupported by substantial evidence because "the ALJ failed to weigh and consider all of the opinions from the examining and treating physician[s] in the record." Id. at 22.

For the reasons discussed above with respect to the other issues raised by Plaintiff, the ALJ's RFC finding is supported by substantial evidence. And by including in the hypothetical question to the VE the same limitations from the RFC finding, the ALJ appropriately accounted for all of Plaintiff's impairments. There was no error, therefore, in the ALJ's reliance on the VE's testimony.

### V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**RECOMMENDED**:

1. That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. That the Clerk be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on December 29, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:

The Honorable Roy B. Dalton, Jr.
United States District Judge

Counsel of record